973

 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   ------------------------------x
                                        21-CR-483(ENV)
 3   UNITED STATES OF AMERICA,
                                        United States Courthouse
 4           Plaintiff,                 Brooklyn, New York

 5           -against-                  November 22, 2022
                                        1:00 p.m.
 6   CHRIS BANTIS,

 7           Defendant.

 8   ------------------------------x

 9           TRANSCRIPT OF CRIMINAL CAUSE FOR TRIAL
             BEFORE THE HONORABLE ERIC N. VITALIANO
10          UNITED STATES SENIOR DISTRICT JUDGE
                         BEFORE A JURY
11

12   APPEARANCES

13   For the Government:      UNITED STATES ATTORNEY'S OFFICE
                              Eastern District of New York
14                            271 Cadman Plaza East
                              Brooklyn, New York 11201
15                            BY:  LINDSEY OKEN, ESQ.
                                   TARA BRIGIT McGRATH, ESQ.
16                                 JENNIFER M. SASSO, ESQ.
                              Assistant United States Attorneys
17
     For the Defendant:      FEDERAL DEFENDERS OF NEW YORK
18                            One Pierrepont Plaza
                              Brooklyn, New York 11201
19                            BY:  NORA K. HIROZAWA, ESQ.
                                   MARISSA SHERMAN, ESQ.
20
     Also Present:           EMILY MOOSHER, PARALEGAL
21                            CAROLINE KISSICK, PARALEGAL
                              PAUL TAMBRINO, AGENT
22
     Court Reporter:         LINDA D. DANELCZYK, RPR, CSR, CCR
23                            Phone:  718-613-2330
                              Fax:    718-804-2712
24                            Email:  LindaDan226@gmail.com

25   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.

PROCEEDINGS                                974

1          (In open court; Jury not present.)

2          (Defendant enters the courtroom.)

3          THE COURTROOM DEPUTY:  Next case on calendar is

4    U.S.A. versus Chris Bantis.  Case Number 21-CR-483 on for a

5    jury trial.

6          Would the attorneys please note their appearances,

7    beginning with government counsel.

8          MS. OKEN:  Good afternoon, Your Honor.  Lindsey

9    Oken, Tara McGrath and Jennifer Sasso on behalf of the United

10   States.  We are joined by paralegal specialist Emily Moosher,

11   and FBI Special Agent Paul Tambrino.

12         THE COURT:  Good afternoon to all at the government

13   table.

14         MS. HIROZAWA:  Good afternoon, Your Honor.  Nora

15   Hirozawa and Marissa Sherman, Federal Defenders, on behalf of

16   Chris Bantis, who is present with us at counsel table, along

17   with our paralegal Caroline Kissick.

18         THE COURT:  And good afternoon to all at the defense

19   table as well.

20         THE COURTROOM DEPUTY:  Counsel for both sides are

21   present, including the defendant.

22         THE COURT:  All right, ladies and gentlemen, the

23   jury came back this morning, went to work as we had planned

24   yesterday.  Apparently they are more relaxed and refreshed.

25   They seem to be busy and provided us with a couple of notes

PROCEEDINGS                                      975

1   that the clerk will mark and read.

2          THE COURTROOM DEPUTY:  Court's Exhibit 7.  Supplies.

3   Request more cups, tape, snack follow up from William.  Thank

4   you.

5          Court's Exhibit 8.  Request from jury.

6          One, NYPD arresting officer's testimony.

7          Two, entire transcript from Jessie's testimony.

8          Three, question for judge.  On September 9th, 2021,

9   what was Chris Bantis arrested for?

10          (Court Exhibits 7 and 8, was received in evidence.)

11          THE COURT:  Do I take the last one first?

12          I don't think there's any evidence in the record of

13   the actual arrest.

14          MS. OKEN:  That's, for the most part, correct, Your

15   Honor, and I think we would propose an instruction sort of to

16   that effect.

17          I think we can sort of quickly dispose of items 1 or

18   2 by telling them the parties are in the process of agreeing

19   upon transcripts to be sent back.

20          With respect to that third question, I think we

21   would propose something along the lines of what Your Honor

22   just said, which is, you know, to the extent there is evidence

23   in the record, they are entitled to review that.

24          And I think some of the testimony that they have

25   requested, including the testimony requested in the instant

PROCEEDINGS                    976

1    note, does in some ways speak to the circumstances surrounding

2    the arrest.

3         But obviously to the extent that they are seeking

4    information that is not in the record at this trial, we would

5    ask that the Court instruct the jury that they're not to

6    speculate as to information that is outside the scope of the

7    record.

8         THE COURT:  Ms. Hirozawa.

9         MS. SHERMAN:  Judge, it's Marissa Sherman.  Hi.

10        The first part of what Ms. Oken just said I think we

11   agree with, which is that whatever testimony and evidence is

12   in the record regarding the arrest, they are free to look at

13   and review.

14        And I think that if they sent a note then back

15   saying we'd like all the evidence about the arrest, they

16   actually have that in the request for these two transcripts.

17        The second part about not to speculate.  My only

18   concern with using the word "speculate" when we are talking

19   about what he was arrested for, is that that could then cause

20   them to actually speculate that he was arrested for something

21   that has nothing to do with this case.  And so we would just

22   ask that the instruction be capped at kind of the first part

23   of what Ms. Oken said.

24        THE COURT:  Is it that it's -- does anyone disagree

25   with the statement that there is no direct evidence of the

PROCEEDINGS                                    977

1    formal arrest in the record?

2              MS. OKEN:  I think, Your Honor, that is -- I guess

3    the answer that I would give is that it sort of depends on

4    what exactly the jury's getting at with their question.

5              If they want to know, you know, what charge the NYPD

6    officers listed, that's correct, I don't think there is any

7    direct evidence of that.

8              If they are looking more for the circumstances, you

9    know, what events led up to it, things like that, there is

10   some information in the record about the 9-1-1 call in advance

11   of the arrest, things of that nature.  So I suppose it depends

12   on exactly what evidence they are looking for.

13             I don't know that we are wedded to the particular

14   language that I referenced earlier about the speculating, and

15   I think, you know, I think we are fine with an instruction

16   that essentially alerts them that they are limited to the

17   evidence in the record, most of which they have already

18   received.

19             THE COURT:  I'm just doing my own speculating.

20             I assume that the issue is that an NYPD officer made

21   an arrest, and most likely the charge that they are now

22   considering isn't what he put on the card, which is probably

23   true.

24             MS. SHERMAN:  Correct.

25             THE COURT:  He would have no reason to even know

PROCEEDINGS                        978

1    that there was a federal issue here.

2              MS. SHERMAN:  I believe that in the paperwork that

3    was provided to the NYPD that the charge that Mr. Bantis was

4    arrested for was a misdemeanor menacing charge.  And then the

5    FBI took over before he was actually even formally charged in

6    state court.

7              So that's correct, there's no evidence in the record

8    of the actual arrest charge, which was a state misdemeanor

9    menacing charge.

10             THE COURT:  I think that's probably what they were

11   driving at.

12             MS. SHERMAN:  Agree.

13             MS. OKEN:  We agree with that as well.  And I think

14   it sounds like we're all on the same page that they are sort

15   of limited to what's in the record.  I have no issue with the

16   Court advising them to that effect.

17             THE COURT:  Advising them that they are limited to

18   what's in the record.

19             And you all want me to tell them that there is

20   nothing in the record before they go crazy as to exactly what

21   the police officer may have written?

22             MS. OKEN:  I think perhaps given that they have

23   already requested testimony that sort of speaks to the

24   circumstances, we could do sort of the inverse of that, which

25   is to advise them that some of the testimony that they have

PROCEEDINGS                              979

1    already requested does speak to some of the circumstances

2    surrounding the arrest.

3            THE COURT:  All right.

4            The officer that testified, was he actually the

5    arresting officer?

6            MS. SHERMAN:  No, which is why we did not elicit

7    that.

8            THE COURT:  I thought that was the case, that he was

9    not the arresting officer.

10           MS. OKEN:  He was present that day, and as Your

11   Honor recalls, he gave some testimony about some of the events

12   that day, but is not the arresting officer.

13           THE COURT:  So Perez was the arresting officer?

14           MS. HIROZAWA:  I believe Gatto was the arresting

15   officer technically on the paperwork, Your Honor.

16           There were about maybe ten officers, maybe six

17   officers present that day.  We received body-camera footage

18   for probably closer to a dozen officers between 9/8 and 9/9.

19           MS. SHERMAN:  Okay.  We have to come up with a --

20   what are we -- when do you anticipate having the transcript,

21   Ms. Oken?  There are going starting on their lunch break soon.

22           MS. OKEN:  I think probably within the next ten to

23   15 minutes.  We've sent the defense proposed redactions with

24   respect to one of the two witnesses.  We still are reviewing

25   testimony from the second, but we expect to send it over

PROCEEDINGS                              980

1    within the next, you know, five minutes, as soon as we go off

2    the record.  So I think the parties will probably be in

3    agreement within the next ten to 15 minutes after we go off

4    the record here.

5              THE COURT:  All right, so I will not detain you.

6    What I will do is let you finish that, then call me back,

7    William, and we'll come back and make sure we don't have any

8    squabbles on the transcript.  And when it's ready to go into

9    the jury, we'll bring them in and answer the question and give

10   them the transcript.

11             MS. OKEN:  Thank you, Your Honor.

12             THE COURT:  Okay.  And in the meantime William I

13   guess has provided them food.

14             MS. OKEN:  And thank you, William.

15             THE COURT:  We're on a roll, so we'll see you in

16   about, if Ms. Oken's guess is good, we'll see you in about 15

17   minutes.

18             MS. OKEN:  Thank you, Your Honor.

19             (A recess was taken at 1:21 p.m.)

20             (Defendant enters the courtroom.)

21             THE COURTROOM DEPUTY:  All rise.

22             Court is back in session.  Counsel for both sides

23   are present, including the defendant.

24             THE COURT:  All right, I understand that counsel

25   have agreed on the transcripts and they're ready to be

PROCEEDINGS                                    981

1    delivered.

2              MS. OKEN:  That is correct, Your Honor.  We are

3    awaiting receipt of the hard copies, which should be here from

4    across the street any second now.

5              THE COURT:  Okay, so what we'll do is we'll bring

6    the jury in and answer their last question.  And if it's

7    miraculous that the transcripts are actually here at that

8    moment, we'll send them back with the transcripts; if not,

9    we'll them that they'll momentarily arrive.

10             MS. OKEN:  Thank you, Your Honor.

11             (Pause in the proceedings.)

12             MS. HIROZAWA:  Your Honor, can we just briefly

13   clarify exactly how the Court plans to phrase the response to

14   the jury's question?

15             THE COURT:  That last question?  I'm just going to

16   tell them facts for them to find in the evidence.

17             MS. HIROZAWA:  Understood, Your Honor.  Thank you.

18             (Pause in the proceedings.)

19             (Jury enters the courtroom.)

20             THE COURT:  Be seated, please.

21             Counsel will stipulate that the jury is present and

22   properly seated.

23             MS. OKEN:  We do, Your Honor.

24             MS. HIROZAWA:  So stipulated.

25             THE COURT:  Thank you, counsel.

PROCEEDINGS                                    982

1          Ladies and gentlemen, good afternoon.  I know you're

2    enjoying your lunch at the moment.  We're not going to keep

3    you too long.  We wanted to let you know that we received your

4    note.

5          Counsel and the Court have been working on the

6    transcript and we have now agreed on a transcript, which

7    should arrive here momentarily, and we will provide that to

8    you and the witnesses that you requested in your last note.

9          Your last note also had a question for me about a

10   fact, which is the arrest of the defendant.  But it's a fact.

11   And the fact department is your department.  During your

12   deliberations, I don't add to the facts, I don't characterize

13   the facts, I don't catalog the facts.

14          So as that fact, like any other fact, you have the

15   evidence before you.  You're free to look at it.  If you need

16   to make requests in connection with it to provide you with

17   additional pieces of evidence, like a transcript, we will

18   endeavor to provide that and give you the opportunity to

19   review it and hopefully find the information that you need.

20   All right?

21          So that's -- we will send you back to continue your

22   deliberations and also to continue your lunch.  And as soon as

23   the transcripts arrive, we will provide that directly to you

24   through the marshal.

25          And we thank you for your again, attentiveness,

PROCEEDINGS                    983

1    promptness, patience, cooperation and your service.  We all

2    appreciate it very much.  Thank you.

3             (Jury exits the courtroom.)

4             THE COURT:  Okay.  So we'll see you again.  I mean,

5    the plan will continue to be, since we've had nothing to

6    indicate any lack of progress.  In fact they seem to come back

7    reinvigorated after their night of relaxation and reflection.

8             So I am mindful of what tomorrow is, the Wednesday

9    before Thanksgiving, and we'll just play it by ear as we go

10   through the afternoon.  And hopefully we'll get a more

11   dispositive communication from the jury between now and

12   midnight, or whatever it is we'll be here.

13            MS. SHERMAN:  Judge, it's Marissa Sherman.  That was

14   actually going to be my question.  Do you have -- obviously we

15   don't know what they're going to send, do you have an

16   intention of what time you're intending to keep them 'til

17   tonight?

18            THE COURT:  I'm trying to keep them -- it's around

19   3, it certainly wouldn't be any earlier than last night.  If

20   they were to give some indication that, you know, we're almost

21   there, then we'll stay.

22            MS. SHERMAN:  Okay.

23            THE COURT:  I don't know what -- I just assume that

24   the jury's like everybody else on the Wednesday before

25   Thanksgiving, they may have time commitments.  People coming

PROCEEDINGS                    984

1   and going and actually coming and going themselves to some

2   other places.

3          MS. SHERMAN:  Yes, and I just -- Judge Kuo, during

4   jury selection, just so you're aware, did indicate that we

5   would -- if the trial was continuing on Wednesday, that we

6   would only be working until 1.

7          THE COURT:  Okay.

8          MS. SHERMAN:  So...

9          THE COURT:  That's good.  And thank you for saying

10  that.  I didn't know that.

11         That's fine, so they have some -- so they do have

12  some expectation.

13         MS. SHERMAN:  Yes.

14         MS. OKEN:  I think that's right, Your Honor.  And

15  any jurors that have travel commitments that would preclude

16  them from working on Wednesday were surfaced as well during

17  jury selection.

18         THE COURT:  During jury selection, okay, that's

19  fine.  So we're relatively, other than defrosting the turkey

20  and the like, okay, I guess.  So we'll see.

21         Again, to the extent that we're getting any

22  indication later in the -- and I've that.  Juries they say,

23  you know, we're going -- I know we're supposed to go home, can

24  we stay another 40, we think we're blah, blah, and I stay.

25         MS. OKEN:  That makes sense, and we're happy to play

PROCEEDINGS                                    985

1    it by ear.

2              THE COURT:  And you're also happy to have lunch.  I

3    think they'll probably be occupied.  I wouldn't have brought

4    up a five-course meal, but I think now is the time to have

5    your lunch, if you haven't done so already.

6              MS. OKEN:  Thank you, Your Honor.

7              THE COURT:  Stay in touch.

8              (A recess was taken at 2:08 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PROCEEDINGS

986

1            A F T E R N O O N   S E S S I O N

2            (Time noted:  3:40 p.m.)

3            (In open court; Jury not present.)

4            (Defendant enters the courtroom.)

5            THE COURTROOM DEPUTY:  All rise.

6            Court is back in session.  Counsel for both sides

7    are present, including the defendant.

8            THE COURT:  All right.  Welcome back.  As you know,

9    we have a note.  The clerk will mark it.

10           (Court Exhibit 9, was received in evidence.)

11           THE COURTROOM DEPUTY:  This is Court's Exhibit 9.

12   Question from the jury and update.

13           Judge, we have continued to deliberate and still

14   cannot reach a unanimous verdict.  We have also reviewed the

15   final jury charge extensively.  Please advise on the

16   recommended next steps.  Thank you.

17           THE COURT:  So I will borrow the jury's question and

18   ask counsel for their advice.

19           MS. OKEN:  Thank you, Your Honor.  Lindsey Oken on

20   behalf of the government.

21           I think Your Honor had indicated on the record

22   yesterday that should we sort of arrive at this juncture, the

23   Court was inclined to deliver the *Allen* charge from *Sand*.

24           I think the government certainly has no objection,

25   and we do agree that at this juncture some form of an *Allen*

PROCEEDINGS                        987

1    charge is appropriate.

2           I think, in an effort to supplement that charge and

3    to sort of avoid giving them a charge that very closely

4    mirrors charges that they've already received, we have sort of

5    three proposals that either individually or in combination we

6    think are worth considering to see if that might prompt some

7    movement.

8           The first is to add some language that is adopted

9    from a case out of the Second Circuit and that was recently

10   blessed by Judge Ross in a recent case that essentially

11   expounds on the policy reasons for delivering an *Allen* charge

12   and informs the jury that there is no reason to believe that

13   this case would be tried either differently or more

14   exhaustively in the future or that a hypothetical future jury

15   would be better equipped or could more intelligently arrive at

16   a verdict.

17          And so it sort of helps to supplement the *Allen*

18   charge in terms of giving the jury an explanation for why it

19   is so important that they continue to deliberate.  And we're

20   happy to sort of propose some specific language to that effect

21   for the Court's consideration.

22          The second proposal that I think we briefly raised

23   on the record yesterday is to provide some additional clarity

24   with respect to the verdict sheet.  And, again, we're happy to

25   provide some proposed language in terms of what we mean

PROCEEDINGS                                    988

1    specifically by that, but I think the essence of it would be

2    that if the jury has reached a unanimous decision as to one or

3    more of the lines set out in the verdict sheet, they can

4    inform the Court of that.  They can check the guilty box and

5    inform the Court of that.  Alternatively, or conversely, if

6    they have unanimously determined that none of the boxes should

7    be checked, they can check not guilty and inform the Court of

8    that.

9             And, again, we're happy to provide some specific

10   language to that effect.

11            And then the third is a little bit less substantive,

12   but to the extent the Court advises the jury that continuing

13   their deliberations into tomorrow morning is a possibility, we

14   wonder if that might affect how they use their remaining time

15   this afternoon.

16            So those are sort of three possibilities again that

17   either individually or in combination might help to prompt

18   some movement and give them some new information that they

19   have not yet heard.

20            MS. HIROZAWA:  Your Honor, unsurprisingly, perhaps,

21   we disagree with the government with regard to those

22   suggestions.

23            First, we move again for a mistrial.  I do think

24   that at this point, following the Court's last instruction

25   yesterday as of 5:30 p.m., the jury returned to the jury room,

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

1   deliberated for another hour, returned this morning, began

2   deliberating at about 10 a.m.  The jury's now been

3   deliberating for over two days, almost two and a half days, on

4   a case that took about four and a half days to try.

5           Based on the questions we've received from the jury,

6   there have been substantive questions, requests for testimony,

7   which have been provided.  Requests for video playback.  And

8   it's clear, I think, that this jury is trying to meaningfully

9   work together, but they simply have been unable to arrive at a

10  unanimous decision, notwithstanding those efforts.

11          I would note that in none of the notes to the Court

12  has the jury indicated that he have any confusion about the

13  verdict form.  The Court did instruct the jury that the

14  verdict form is self-explanatory, but if they had any

15  questions about it, to notify the Court.

16          And so I don't see any reason to provide further

17  instruction regarding the verdict form, given that there's

18  been no question about the verdict form.  We're aware that

19  this jury is quite capable of asking questions about the

20  questions they have.

21          And additionally they have stated that they are

22  unable to arrive at a unanimous decision, and so I think the

23  government's concern that they may have agreed at something

24  unanimously but simply don't know what box to check, is just

25  not grounded in the notes that we have received, in particular

PROCEEDINGS                                    990

1    Court Exhibit 9.

2             Additionally, Your Honor, I think we believe that it

3    would be at this point, given that the jury has deliberated

4    for almost another full day since the last instruction, to --

5    about the duty to deliberate, we believe that it would be

6    coercive to issue an *Allen* charge at this juncture when they

7    have clearly taken that last instruction seriously and made

8    diligent efforts to arrive at a decision.

9             And instruct -- in issuing an *Allen* charge at this

10   point we believe would force them -- would cause them to

11   believe that it is impermissible not to arrive at a decision.

12            And we believe that it would be coercive to discuss

13   deliberating until Thanksgiving to create -- to quote/unquote

14   create some movement.  I think the type of movement that

15   Ms. Oken's referring to is exactly the type of coercion that

16   we do not want in the jury room.

17            And so, Your Honor, that would be our request, first

18   the motion for a mistrial and then we're happy to address with

19   further specificity any other questions the Court may have.

20            THE COURT:  Do you want any brief reply, Ms. Oken?

21            MS. OKEN:  I'm happy to very briefly reply to the

22   mistrial application, as well as the suggestion of coercion

23   here.

24            With respect to a mistrial application, I think the

25   Court is well aware of the length of time this jury has been

1    deliberating, which is not exceeding long.  They had a full

2    day yesterday, albeit with a late start, and I think had less

3    than two hours the prior week.

4          So I don't think we're at the juncture quite yet

5    where we should be giving serious consideration to a mistrial

6    application, particularly in light of the fact that they have

7    not been delivered an *Allen* charge quite yet.

8          With respect to the suggestion of coercion, we think

9    that coupled with the Court's standard *Allen* charge, this

10   language would not cause any coercion, because the jury would

11   be reminded about maintaining any firmly-held views while

12   simultaneously being open to engaging in conversation and

13   revaluating their views, in light of compelling arguments

14   regarding the evidence.  So we think the sum total of the

15   Court's instruction would not at all give a suggestion of

16   coercion.

17         And then finally, I'll briefly address the verdict

18   sheet.

19         The jury certainly has not in their notes expressed

20   any confusion about the verdict sheet.  But I will note that

21   the verdict sheet is not explicit to the effect of these being

22   alternative bases for reaching a verdict.  And what I mean by

23   that is, it doesn't use language like if this or this or this

24   or this, and I think as the Court is aware, there was an

25   additional check line added just before this verdict sheet was

PROCEEDINGS                               992

1    finalized, which I think may have caused some heightened

2    confusion as to how many boxes and where they need to be

3    checked.

4            So I think some additional clarity could be helpful

5    in terms of advising them that if they have reached unanimity

6    as to one or more, they can alert the Court of that and keep

7    the instruction balanced.  We could similarly advise them that

8    if they have reached unanimity as to checking none of them,

9    they could similarly advise the Court of that.

10           THE COURT:  All right, I find myself closer to the

11   defense position than the government has issued here.

12           The verdict sheet has to be read in conjunction with

13   the charge, and I am convinced that they have done exactly

14   that.

15           I read their notes to suggest that at this point

16   that they are deadlocked.  They have not reached a decision

17   unanimously about anything that would -- on any categories so

18   that they haven't reached the unanimous decision of between

19   guilt and innocence and not guilty because they haven't

20   reached the unanimous position that any one of the tick-box

21   items applies.  So that they're -- I'm sure some for guilt and

22   some for not guilty on each one of those tick marks.

23           When you analyze how long the trial lasted, you have

24   to parse out the colloquies, the openings, the closings, the

25   instructions to the jury, and basically it is pretty close now

PROCEEDINGS                              993

1    that they have actually been in the deliberating room

2    deliberating about as long as the evidence production part of

3    the trial lasted.

4           So that any further instruction would really have to

5    be along the lines of the deliberation, the instructions we

6    gave yesterday, which was really a reread of the deliberations

7    instructions and the final charge.

8           And when you read to commentary to *Sand* in

9    particular, the Second Circuit commentary, that the language

10   about the majority should do this and the minority should do

11   that and the other, is disfavored and particularly in this

12   context.  I think that the Circuit would find it disfavored.

13          The balance of the charge is -- again, it may be a

14   slight step up from what we, I guess, a reformulation,

15   essentially, of what we read -- of what we read to them

16   yesterday, their duty to more collaboratively in the end not

17   to give up any consciously-held position just for the sake of

18   reaching a final decision.

19          So I see it as almost a lost cause but trying not to

20   make it a lost cause.  We've come up with a version of the

21   *Allen* charge as it is set forth in *Sand*, minus the minority

22   language, and I'll ask Scott, it's not that long, to read it

23   now and seek positions of counsel on it.

24          Scott?

25          THE LAW CLERK:  As I told you in my original

LINDA D. DANELCZYK, RPR, CSR, CCR
Official Court Reporter

PROCEEDINGS                                          994

1    instructions, this case is an important one to the government.

2    It is equally important to the defendant.  It is desirable if

3    a verdict can be reached, but your verdict must reflect the

4    conscientious judgment of each juror, and under no

5    circumstance must any juror yield his conscientious judgment.

6              It is normal for jurors to have differences; this is

7    quite common.  Frequently, jurors, after extended discussions,

8    may find that a point of view that originally represented a

9    fair and considered judgment might as well yield upon the

10   basis of argument and upon the facts and the evidence.

11   However, and I emphasize this, no juror must vote for any

12   verdict unless after full discussion a consideration of the

13   issues and exchange of views, it does represent his or her

14   considered judgment.

15             Further consideration may indicate that a change in

16   original attitude is fully justified on the law and all of the

17   facts.  I do want to read to you a statement that is contained

18   in a Supreme Court opinion that is well known to the bench and

19   the bar, and it is this:

20             That although a verdict must be the verdict of each

21   individual juror and not mere acquiescence in the conclusion

22   of his fellows, yet they should examine the questions

23   submitted with candor and with a proper regard and deference

24   to the opinions of each other; that is what their duty to

25   decide the case if they could consciously do so.

PROCEEDINGS                          995

1          You are reminded also that the prosecution bears the

2    burden of proving each element of the offense beyond a

3    reasonable doubt.  Do not ever change your mind just because

4    the other jurors see things differently, or just to get the

5    case over with.  As I told you before, in the end, your oath

6    must be exactly that - your vote.  As important as it is for

7    to you reach unanimous agreement, it is just as important that

8    you do so honestly and in good conscience.  What I have just

9    said is not meant to rush or pressure you into agreeing on a

10   verdict.  Take as much time as you need to discuss this.

11   There is no hurry.

12          THE COURT:  As I said, it's really an embellishment

13   on what we read them yesterday.  It may have an affect.  I

14   think, given the tea leaves here, that this is a truly

15   deadlocked jury in the sense that some have a different view

16   of the facts.  Not a confusion about the law, not a confusion

17   about the verdict sheet, it is a disagreement as to whether or

18   not certain facts happened and or the happening of those facts

19   made up with the law that they received the final instruction.

20          MS. OKEN:  Understood, Your Honor.  With respect to

21   that proposed language, I don't think we have any objections

22   to it but if Your Honor wouldn't mind, I will read the two

23   sentences that was adopted from language that was blessed by

24   Judge Ross and adopted from a Second Circuit case, which

25   essentially provides:

PROCEEDINGS                          996

1          There does not appear to be any reason to believe

2     that the case can be tried again better or more exhaustively

3     than it has been on either side.  So there appears to be no

4     reason to believe if the case were to be submitted to another

5     jury that jury would be more intelligent, more impartial, or

6     more competent to decide it then you are.

7          And so we think that might sort of provide some

8     additional color.  We understand that this is a charge that

9     the Court -- the one that the Court read is one that has been

10    reviewed by the Court already, and we have no objection to it

11    but wanted to propose this for some additional language for

12    the Court's consideration.

13         MS. HIROZAWA:  Your Honor, we would object to that

14    language, specifically based on the events that have

15    transpired up until this point and the notes that we've

16    received.

17         I think that type of charge might be appropriate in

18    a case where a jury has responded with deadlock I think with

19    succession or whether some question about the jury carefully

20    considering the evidence before them.

21         But here I don't think that's the case and I do

22    think that language would be coercive under the circumstances

23    or a case like a mistrial.

24         THE COURT:  I'm not going to add it, and as I say,

25    my view is more akin to the defense side.

PROCEEDINGS                                                997

1          The jury's, I think, told us just the opposite.

2     That they've worked very hard.  That they have scoured the

3     evidence and there's just a disagreement when they, among

4     them, as I say, either attracts themselves and/or how those

5     facts that they agree on relate to the law that we gave them.

6          This is just an encouragement for them to make a

7     final last effort to the listen to each other, and perhaps

8     somebody -- and it has to be somebody in the room, not

9     somebody out here, persuades them to a different view.  We

10    don't know if they're 11 and 1.  We don't know if they're 6

11    and 6.

12          MS. HIROZAWA:  And, Your Honor, on that note, I

13    think the Court's perception based on the notes is likely

14    accurate.

15          We would request that the Court include the First

16    Circuit addition in this *Sand* instruction, which simply states

17    in the last paragraph:  But if you cannot agree, it is your

18    right to fail to agree, or some other indication that it is

19    permissible for them to not reach an agreement and that's just

20    to curb any potential --

21          THE COURT:  I think that is plain as day in the last

22    sentence, as Scott read it.  It doesn't need any further

23    embellishment.

24          Okay, let's bring them in.  Scott will read them the

25    charge, and we'll go from there.

PROCEEDINGS                                    998

1              (Jury enters the courtroom.)

2              THE COURT:  Be seated, please.

3              Counsel will stipulate that the jury is present and

4    properly seated.

5              MS. OKEN:  Yes, Your Honor.

6              MS. HIROZAWA:  So stipulated.

7              THE COURT:  Thank you, counsel.

8              Ladies and gentlemen, welcome back to the courtroom.

9    We do have your note and, again, we all very much appreciate

10   your continued service and your patience and your

11   attentiveness to the job.

12             It is not unusual for jurors to have disagreement.

13   That's why deliberations generally last as long as they do and

14   hence sometimes we will get a note of the kind that you sent

15   to all of us, which said that you are deadlocked and now what,

16   essentially.

17             And the pattern jury instructions do have a charge,

18   an instruction for jurors who basically send notes like that

19   to the Court, and we are going to -- and hopefully it will be

20   of help to all of you.

21             I'm going to ask Scott Woods to read that charge to

22   you now and then we're going to send you back to the jury room

23   for further deliberations.

24             Scott.

25             THE LAW CLERK:  As I told you in my original

PROCEEDINGS                                    999

1    instructions, this case is an important one to the government.

2    It is equally important to the defendant.  It is desirable if

3    a verdict can be reached, but your verdict must reflect the

4    conscientious judgment of each juror, and under no

5    circumstance must any juror yield his conscientious judgment.

6          It is normal for jurors to have differences; this is

7    quite common.  Frequently, jurors, after extended discussions,

8    may find that a point of view that originally represented a

9    fair and considered judgment might well yield upon the basis

10   of argument and upon the facts and the evidence.  However, and

11   I emphasize this, no juror must vote for any verdict unless

12   after full discussion and consideration of the issues in

13   exchange of views, it does represent his or her considered

14   judgment.

15         Further consideration may indicate that a change in

16   original attitude is fully justified on the law and all of the

17   facts.  I do want to read to you a statement that is contained

18   in a Supreme Court opinion that is well known to the bench and

19   bar, and it is this:

20         That although a verdict must be a verdict of each

21   individual juror and not a mere acquiescence in the conclusion

22   of his fellows, yet they should examine the question submitted

23   with candor and with the proper regard and deference to the

24   opinions of each other; that is with their duty to decide the

25   case if could conscientiously do so.

PROCEEDINGS                           1000

1          You are reminded also that the prosecution bears the

2     burden of proving each element of the offense beyond a

3     reasonable doubt.

4          Do not ever change your mind just because the other

5     jurors see things differently, or just to get the case over

6     with.  As I told you before, in the end, your vote must be

7     exactly that - your vote.  As important as it is for you to

8     reach unanimous agreement, it is just as important that you do

9     so honestly and in good conscience.  What I have just said is

10    not meant to rush or pressure you into agreeing on a verdict.

11    Take as much time as you need to discuss this.  There is no

12    hurry.

13          THE COURT:  All right, ladies and gentlemen, that's

14    the instruction.  We hope that is of value to you.  We send

15    you back to the jury room and allow you to continue your

16    discussions.

17          (Jury exits the courtroom.)

18          THE COURT:  Any further inquiry of counsel, assuming

19    that there is no verdict, that we have a mistrial, do counsel

20    want to have an opportunity to chat with the jury in the jury

21    room?

22          MS. HIROZAWA:  Yes, Your Honor, from the defense.

23          THE COURT:  The government, too?

24          MS. OKEN:  Yes, Your Honor.

25          THE COURT:  Okay, so I'll try to -- we can't keep

PROCEEDINGS                    1001

1   them, but I will encourage them to stay, or as many of them

2   who want to stay to stay, it is the Tuesday before

3   Thanksgiving, and hopefully at least some of them will.

4            And, Scott, I'm sure you'll benefit from it as well.

5            All right, so we'll -- hopefully we end up with a

6   verdict, but time will tell.

7            But we'll see you, and what goes around again, if we

8   haven't heard from them, I think we will probably adhere to

9   the -- we're not going to torture them longer than last night,

10  so we'll adhere to it, around 6:15 p.m. we'll pull them back

11  out at around 6:30 p.m., if we have not heard from them.

12           MS. HIROZAWA:  Understood.  Thank you, Your Honor.

13           MS. OKEN:  Thank you, Your Honor.

14           THE COURT:  You're welcome.

15           (Pause in the proceedings.)

16           THE COURTROOM DEPUTY:  All rise.

17           (Defendant enters the courtroom.)

18           THE COURTROOM DEPUTY:  Court is back in session.

19           Counsel for both sides are present, including the

20  defendant.

21           THE COURT:  All right, be seated, please.

22           I wish I had a note to report incoming, but we

23  don't.  Normally what I -- and it gets a little awkward so I'm

24  going to suggest we do it in writing.

25           I would make at this point an inquiry of the jury if

PROCEEDINGS                                    1002

1    they needed additional time to deliberate and send them back

2    to the jury room to answer that question so that they can do

3    it collectively rather than having different voices or

4    whatever from the jury box.

5            I propose that we send back a single inquiry and,

6    I'll have Scott read it to you, see what the views of counsel

7    might be.

8            THE LAW CLERK:  Status inquiry from the Court.

9    Please reply in writing.  Does the jury request the Court to

10   provide additional time for deliberations.

11           MS. OKEN:  Your Honor, this is Lindsey Oken for the

12   government.

13           I think given that the Court's last instruction,

14   which was after 4 p.m. today, that informed the jury that

15   there was no hurry, no rush, and that they should take all the

16   time that they need, I think the absence of the communication

17   in the interim is a bit telling, especially from a jury that

18   has been quite active in terms of communication.

19           So I think we would suggest that silence suggests

20   that they are digging back in and that in the absence of any

21   indication that they remain deadlocked, we should assume that

22   they have relied on the Court's representation that there is

23   no hurry and that they are entitled to take as much time as

24   they need.

25           So I think we certainly have no issue with making an

LINDA D. DANELCZYK, RPR, CSR, CCR
Official Court Reporter

PROCEEDINGS                                    1003

1    inquiry of the jury, but I think we would propose a slightly

2    tweaked version that sort of inquires whether they would like

3    to continue deliberating into this evening or whether they

4    would like to return tomorrow to continue their deliberation.

5            MS. HIROZAWA:  The defense has no objection to the

6    language the Court has proposed.

7            I think in light of the Court's last instruction,

8    which did not include the portion of the instruction that

9    advises them that it is permissible not to arrive at a

10   verdict, I think that this language would be adequate.

11           THE COURT:  Yes, I think they may have notes passing

12   in the interim here, but we've sort of set 6:30 as a break

13   point.

14           I interpret their silence that they're waiting, as

15   we did last night, for us to tweak them as opposed to them to

16   tweak us.  And I kept it as open as possible.  I didn't say

17   when they would get, you know, time before they needed

18   additional time.

19           And the answer is either going to be yes or no.

20           MS. OKEN:  Sure.

21           THE COURT:  And if the answer were to be yes, it

22   would not be tonight.

23           MS. OKEN:  Sure.

24           We understand that.  It does make sense to make an

25   inquiry of the jury at this juncture.  I think our only

PROCEEDINGS                           1004

1    thought what was the nature of that inquiry should be and how

2    should it be phrased in light of the fact that they were given

3    the *Allen* charge proximately two hours ago.

4           THE COURT:  I'm always of the view on these

5    instructions that less is more, particularly and including on

6    appeal.

7           MS. OKEN:  Sure.  And I don't know that we would

8    propose adding more so much as inquiring whether they might --

9           THE COURT:  Lindsey, you did ask me to add more.

10          MS. OKEN:  I think we would propose a substitute in

11   lieu of a supplement.

12          THE COURT:  It comes out the same way.

13          I'm going to have the deputy clerk provide it to the

14   marshal to provide it to the jury.

15          (Pause in the proceedings.)

16          THE COURT:  Counsel, to clarify, we're asking them

17   to actually respond on that sheet of paper and so, therefore,

18   we'll mark it as an exhibit when we get their response.

19          MS. HIROZAWA:  Thank you, Your Honor, that was our

20   understanding.

21          (Pause in the proceedings.)

22          (Court Exhibit 10, was received in evidence.)

23          THE COURT:  We will mark it Court's Exhibit 10 for

24   the record.

25          MS. HIROZAWA:  Court's Exhibit 10, response to the

PROCEEDINGS                           1005

1    Court's inquiry.  Not for today, maybe we convene tomorrow.

2              THE COURT:  So there you have it.

3              MS. HIROZAWA:  Only maybe?

4              MS. OKEN:  Your Honor, we have a group of dedicated

5    jurors on our hands.

6              THE COURT:  God bless them.

7              And it is -- I think it's better that we should tell

8    them, remind them today, that since -- indicating that they

9    want us to reconvene, we will indeed schedule a session

10   tomorrow.  But as Judge Kuo had indicated, it won't go past 1

11   tomorrow.

12             MS. HIROZAWA:  Sounds good, Your Honor.

13             MS. OKEN:  Your Honor, do we want to discuss their

14   starting hour in light of the short day tomorrow?

15             THE COURT:  There are difficulties for me to get

16   here.  So I mean they could come and start without me until --

17   and hold a note until I get here at normal time.  That's a

18   possibility.

19             You want them to come in 9:30?

20             MS. OKEN:  Your Honor, I think the government's

21   available at 9, 9:30 and have no objection to holding any

22   notes until the Court is available.

23             MS. SHERMAN:  I don't think that the defense has an

24   objection.  I know a number of our jurors are coming in from

25   Long Island and they've been coming in every day.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                                1006

1          THE COURT:  They are supposedly coming in at 9:45,

2     and we're trying to get them so that they are here by 10.

3          MS. SHERMAN:  We have no objection.

4          MS. HIROZAWA:  And we can certainly be available by

5     the time the Court is available.

6          THE COURT:  I'm normally here at 9:45 anyway, but

7     sometimes the Staten Island Ferry does not cooperate.

8     Although the weather is supposed to be good tomorrow, but that

9     doesn't necessarily mean anything.

10          Okay.  So we'll bring them back and tell them to try

11     to get here between 9:15 and 9:30, and we'll start as close to

12     that time and they're all here.

13          MS. OKEN:  Thank you, Your Honor.

14          MS. SHERMAN:  You're welcome.

15          MS. HIROZAWA:  Thank you, Your Honor.

16          THE COURT:  Welcome.

17          (Pause in the proceedings.)

18          (Jury enters the courtroom.)

19          THE COURT:  Be seated, please.

20          Counsel will stipulate that the jury is present and

21     properly seated.

22          MS. OKEN:  We do, Your Honor.

23          MS. HIROZAWA:  So stipulated.

24          THE COURT:  Thank you, counsel.

25          Ladies and gentlemen, thank you for advising us on

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                           1007

1    your desire to further deliberate, but not tonight.  We will

2    then indeed reconvene tomorrow.

3           All of us very much admire and appreciate your

4    dedication to serve and understanding how important your

5    service is overall to both sides and to the rule of law.  So

6    you've been a model of working hard and deliberating hard, and

7    we all appreciate that.

8           But we will take our break for the night.  And as

9    you may recall way, way back when you were before Judge Kuo,

10   the jury selection, she assured everyone that whatever

11   happened in the case that you wouldn't be working on the

12   Wednesday before Thanksgiving past 1 p.m., and we will keep

13   that promise that Judge Kuo made.

14          So you have no concerns, so if you have travel plans

15   to keep or turkeys to stuff or whatever, you'll be out no

16   later than 1.  Obviously if you have a verdict in advance of

17   that we're not going to keep you until 1, we'll let you go as

18   soon as you've completed your work.

19          But all of the other admonitions continue to apply.

20   Again, use the overnight hours as a chance to relax and to

21   reflect on the work that you've done today and the work that

22   lies ahead.  That reflection is a silent reflection.  You're

23   not sharing it with anyone.  You're not to discuss the case

24   amongst yourselves or with anyone else.

25          There is what I call the "radio silence rule".

PROCEEDINGS                          1008

1    You're not by any form of communication not just walkie-talkie

2    or social media or telephone or whatever, discuss the fact

3    that you are a juror, that you're coming to the courthouse, or

4    anything that even remotely touches upon the case.

5           You're not to use the overnight hours to do some

6    homework.  Again, there's no homework in this school.

7    Everything is done in here in the courtroom and in the jury

8    deliberation room.

9           So there's no research, electronic or otherwise,

10   that you can do about anything that remotely touches on the

11   case.  And certainly not permitted to visit any of the

12   locations that have been identified in the course of the

13   trial.

14          There is also a concern about media attention to

15   this case, and to the extent, again, using that broader

16   definition of "media", should it pop up, appear on your

17   internet screen or on your TV or radio or in your newspaper,

18   you are to totally disregard it.

19          And I still encourage you to try to tune out,

20   disregard media accounts of any legal proceeding for fear that

21   it will confuse you about what your responsibilities are here.

22          And we know that we're all sensitive to commutation

23   issues, particularly on a, quote, get-away day, unquote, but

24   we're going to ask you to try to come into the courthouse

25   somewhere between 9:15 and 9:30, so we'll try to start a half

PROCEEDINGS                                   1009

1    hour earlier and build in some additional time for you, and

2    then we will resume deliberations as soon as all 12 of you are

3    here and you're in the deliberation room behind the closed

4    doors and in the custody of the marshal.

5                So, again, we appreciate your time and your service,

6    bid you a pleasant evening, and look forward to being with you

7    tomorrow morning.

8                Have a pleasant night.

9                (Jury exits the courtroom.)

10               THE COURT:  Okay, well I guess we'll see everybody

11   tomorrow.

12               MS. OKEN:  Thank you, Your Honor.

13               THE COURT:  Have a pleasant evening.

14               MS. OKEN:  You, too.

15                         *    *    *    *    *

16               (Proceedings adjourned at 6:55 p.m. to resume on

17   November 23, 2022 at 10:00 a.m.)

18

19                         *    *    *    *    *

20

21                      E X H I B I T S

22   COURT                                      PAGE

23   7 and 8                                    975

24   9                                          986

25   10                                         1004

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*